```
          UNITED STATES DISTRICT COURT
             DISTRICT OF MINNESOTA
             Civil No. 15-78(DSD/KMM)
```

Eddie Frizell

       Plaintiff,

v.                                                     **ORDER**

Janee Harteau and
the City of Minneapolis,

       Defendants.

    Kevin D. Hofman, Esq. and Halleland Habicht PA, 33 South 6th Street, Suite 3900, Minneapolis, MN 55402, counsel for plaintiff.

    Sara J. Lathrop, Esq. and Minneapolis City Attorney's Office, 350 South 5th Street, Room 210, Minneapolis, MN 55415, counsel for defendants.

This matter is before the court upon the motion for summary judgment by defendants Janeé Harteau and the City of Minneapolis. After a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This employment dispute arises out of the removal of plaintiff Eddie Frizell from his position as Deputy Chief of Patrol of the Minneapolis Police Department (MPD). Frizell, who has worked for the MPD since 1993, has held various positions within the department. In late 2012, Police Chief Harteau appointed Frizell, then a lieutenant, to the position of Deputy Chief of Patrol. Lathrop Decl. Ex. 2. Frizell was responsible for the five MPD

precincts and a special operations unit.[1]

Harteau appointed Matthew Clark as Assistant Chief. Frizell and two other deputy chiefs - Travis Glampe and Kris Arneson - reported to Clark, who in turn, reported to Harteau.[2] Frizell and Clark had worked together in the past and, for reasons that are neither clear nor material, did not get along. See Frizell Dep. at 38:9-39:23; Clark Dep. at 8:11-10:2. Harteau was aware of the conflict, but did not believe it would be disruptive. Harteau Dep. at 68:11-69:6.

Although Frizell initially performed well, approximately six months in to his appointment, Clark reported that Frizell was unresponsive and delinquent in providing his subordinates with important information. Id. at 52:4-22. Deputy chiefs Glampe and Arneson made similar complaints. Id. at 55:16-56:25; Glampe Dep. at 19:2-5; Frizell Dep. at 84:12-88:2. Glampe also noted that the problems between Frizell and Clark inhibited the team's ability to resolve larger department issues. Glampe Dep. at 19:5-20:4. Frizell denies having performance issues, but acknowledges that he and Clark often clashed. See Frizell Dep. at 38:15-17, 47:18-23; 66:18-24, 74:2-7.

---

[1] In addition to his job with the MPD, Frizell is a colonel in the Army National Guard. Frizell Dep. at 5:13-15, 6:11-7:5. He has served honorably through two combat tours. Id. at 12:5-9.

[2] Harteau referred to her deputy chiefs and the assistant chief as her "executive team." See Harteau Dep. at 60:20-23.

Harteau, Clark, and Frizell met more than once to discuss the ongoing issues. Harteau Dep. at 57:4-9. Harteau took no formal action, but directed Frizell to be more responsive and to ask for help when needed. Id. at 60:18-61:10. When the problems persisted, Harteau met with the assistant chief and deputy chiefs, including Frizell, in January 2014. Frizell Dep. at 96:22-97:15; Harteau Dep. at 62:23-63:2. Frizell's colleagues again expressed concerns about his responsiveness and trustworthiness. Harteau Dep. at 64:4-10. The meeting did not resolve matters. Id. at 64:11-24. Thereafter, Harteau considered "unappointing" Frizell. Id. at 64:25-65:15. She met with the City Attorney to discuss her options and also met with a consultant to explore how best to manage, and possibly remove, Frizell from his position. Id. at 64:25-65:15; Buford Decl. ¶¶ 3-4; id. Ex. A.

On June 3, 2014, before Harteau could made a final decision, Frizell announced his candidacy for Hennepin County Sheriff. Lathrop Decl. Ex. 6. Harteau told Frizell that she supported his decision to do so. Frizell Dep. at 152:4-12. According to Frizell, however, Harteau also told him that "by running for office, you let your troops down." Id. at 142:22-23. Frizell interpreted the comment to mean that Harteau was upset with him. Id. at 142:23-143:7. Harteau suggested that Frizell take a paid leave of absence from his position with the MPD to focus on the campaign, and he did so. Id. at 142:16-21.

During Frizell's leave of absence, Clark handled Frizell's duties along with his assistant chief duties. Clark Dep. at 49:3-11. Harteau was pleased with the arrangement and decided to formally combine those positions and create a new position, deputy chief of staff.[3] Harteau Dep. at 84:4-88:4. Harteau did not consider Frizell for the chief of staff position because Frizell's strength is "patrol centered" rather than administrative. Id. at 88:5-14.

Frizell lost the election. On November 12, 2014, Frizell and Harteau met to discuss his return to the MPD. Id. at 95:2-11. Harteau secretly recorded the conversation because Frizell could be defensive when faced with criticism and she was concerned that he might later challenge her version of events. Id. at 96:6-97:4. Harteau told Frizell that she was going to make structural changes to the team by combining the assistant chief and deputy chief of patrol positions. Lathrop Ex. 7, at 2:00-35. She noted the ongoing "team dynamic struggles" and her desire to have "a strong functioning team." Id. at 3:04-18, 4:35-43. She told Frizell that he would no longer be a part of the executive team, but that she wanted him on her management team as a commander. Id. at 2:57-3:04, 3:19-23. Although Frizell expressed concern about a decrease

---

[3] Harteau was limited to three deputy chief positions. Harteau Dep. at 86:13-20. Combining the assistant chief and deputy chief of patrol positions enabled to her to create the chief of staff position with the appropriate rank and authority. Id. at 85:23-86:5, 89:5-10.

4

in salary, he was open to the change and interested in the lieutenant-level watch commander position. Id. at 10:40-11:30, 13:20-53. Harteau further explained that other changes would be made as well and that her goal was to "put people where [they're] most valuable." Id. at 8:42-9:03. At the end of the meeting, Frizell acknowledged that team dynamics necessitated the change:

> Frizell: "You know, I hope my performance didn't become a part of that, just, I understand the fit part. You know, I've always tried to give you 100% and give the department that."
>
> Harteau: "Well it's just, it's team dynamics. You know. It's just I have to have a strong functioning team and ... that's just not working."
>
> Frizell: "Not a problem, I totally agree with you. I mean I'm not pushing back on that ...."

Id. at 21:37-22:05.

When Frizell returned to work on November 17, 2015, Harteau gave him a formal offer for the commander position, including an employment contract to sign. Lathrop Decl. Ex. 8. She also offered a severance agreement and release relating to his removal from the deputy chief position. At a meeting the following day, Harteau gave Frizell letter notifying him that he could request a Veteran's Preference Act (VPA) hearing and that the city retained the right to claim that he is ineligible for such a hearing. Id. Ex. 9.

On November 19, Harteau announced, among other changes, that Frizell would serve as the commander of operations and

5

administration beginning in January. Id. Ex. 10. At that point, however, Frizell had not yet accepted the position. He was surprised by the announcement and felt it was designed to pressure him to make a decision. Frizell Dep. at 185:14-25.

After the announcement, a reporter for the StarTribune contacted Frizell for comment. Lathrop Ex. 11. Frizell denied knowing the reason for Harteau's decision: "I didn't deserve this and if there's a person that can articulate (why this happened) we would have found them already." Id. Frizell admits that he was quoted accurately. Frizell Dep. at 189:15-21.
Harteau discussed the article with Frizell and he explained that he did not want to "get into team dynamics with a reporter." Harteau Dep. at 135:23-25. He also denied understanding the reason for his removal, despite his earlier statements to the contrary. Frizell Dep. at 194:10-15. Concerned with his trustworthiness in light of the article, Harteau withdrew her offer to appoint him commander and reassigned him to lieutenant, his civil service rank. Lathrop Decl. Ex. 12; Harteau Dep. at 135:1-13.

Frizell believes that Harteau's decision to remove him was motivated by his decision to run for sheriff against incumbent Richard Stanek. Harteau denies the allegation and Stanek denies any involvement in employment decisions relating to Frizell. Stanek Aff. ¶ 3. Frizell also believes that Harteau withdrew the commander offer simply because he spoke to the press. Harteau

6

maintains that she withdrew the offer because his statement to the press was untrue.

On January 14, 2015, Frizell filed this suit alleging that Harteau and the City of Minneapolis violated the VPA by denying him a hearing, and 42 U.S.C. § 1983 by denying his due process rights under the Fourteenth and Fifth Amendments[4] and retaliating against him exercising free speech in violation of the First Amendment. Defendants now move for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party.

---

[4] The complaint alleges a violation of the Fourth Amendment, but the claim is properly brought under the Fifth Amendment.

Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II.  VPA**

The VPA provides that honorably discharged veterans may not be "removed" from employment by a city "except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." Minn. Stat. § 197.46(a). Frizell argues that defendants violated the VPA by not granting him a hearing before he was demoted from commander to lieutenant.[5] Frizell's argument is unavailing. "The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." Commercial Assocs., Inc. v. Work Connection, Inc., 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). The record establishes that although Frizell was offered the commander position, he never

---

[5]  Frizell concedes that he had no right to a VPA hearing relating to his removal from the position of deputy chief. See ECF No. 24.

8

accepted that offer. See Compl. ¶¶ 17, 22; Frizell Dep. at 31:13-21, 35:19-21. Harteau's announcement that Frizell would serve as commander - although certainly premature and possibly designed to pressure Frizell into accepting the position - does not constitute acceptance by Frizell.

Frizell argues that there is a fact dispute as to whether he entered into an oral contract to serve as commander. The record does not support such a finding given Frizell's admission that he never accepted the offer. Moreover, it is undisputed that Frizell never signed a contract setting forth the terms and conditions of the commander position as required. See Minneapolis, Minn., Ordinance 20.456 ("All full-time employees ... shall enter into an employment contract with the city. The employment contract shall set forth all the terms and conditions of employment ....").

Even if Frizell had accepted the position, however, it is undisputed that he did not request a VPA hearing despite having notice of his right to do so. See Lathrop Decl. Ex. 9. He has thus waived his claim. See Minn. Stat. § 176.46(b) ("The failure of a veteran to request a hearing within the provided 60-day period shall constitute a waiver of the right to a hearing. Such failure shall also waive all other available legal remedies for reinstatement."). Frizell's VPA claims fails as a matter of law.

**III. Due Process**

    **A.   Harteau in Her Individual Capacity**

9

Frizell argues that Harteau, in her individual capacity, violated § 1983 by denying him a hearing under the VPA. Because the court dismisses the VPA claim, this claim must also be dismissed.

**B.   Harteau in Her Official Capacity and the City**

Frizell also argues that Harteau, in her official capacity, and the City violated § 1983 by demoting him from commander to lieutenant.[6]  As already discussed, Frizell did not accept the offer to become commander. Accordingly, this claim also fails.

**IV. First Amendment**

Harteau moves for summary judgment on Frizell's First Amendment claim on the basis of qualified immunity. "Qualified immunity protects government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Crutcher-Sanchez v. Cty. of Dakota, 687 F.3d 979, 984 (8th Cir. 2012) (citations and internal quotation marks omitted). The qualified immunity analysis has two components:  whether the government official violated the plaintiff's rights and whether the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009).  "If the answer to either question is no, then [the

---

[6] Frizell has withdrawn the claim that his due process rights were violated due to his removal as deputy chief.

defendant] is entitled to qualified immunity." Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010).

Frizell alleges that Harteau removed him as deputy chief and then withdrew the offer to become commander[7] to retaliate against him for running for sheriff and commenting to the press about his removal. To prevail on a § 1983 claim for retaliation in violation of the First Amendment, Frizell must demonstrate that (1) he engaged in a protected activity; (2) Harteau took adverse action against him; and (3) the protected activity was a "substantial or motivating factor" in the adverse employment action. Davison v. City of Minneapolis, 490 F.3d 648, 655-56 (8th Cir. 2007). Whether speech is constitutionally protected is a question of law, whereas the question of whether the speech was a substantial or motivating factor is a question of fact. Kincade v. City of Blue Springs, 64 F.3d 389, 395 (8th Cir. 1995); Cox v. Dardanelle Pub. Sch. Dist., 790 F.2d 668, 675 (8th Cir. 1986).

### A.  Run for Office

Although Frizell has established the first two elements of his retaliation claim with respect to his run for sheriff and subsequent removal - protected activity and adverse action - he has

---

[7] Frizell bases his retaliation claim on the allegation that he was demoted from commander to lieutenant but, as noted, Frizell never accepted the commander position. The court will consider the claim in the context of the withdrawal of the offer and will assume, without deciding, that the withdrawal constituted an adverse employment action.

failed to establish a causal connection between the two.

The record supports Harteau's explanation that she removed Frizell as deputy chief because (1) he was the source of conflict within her executive team; (2) the team functioned more efficiently during his leave of absence; and (3) she decided to combine the assistant chief and deputy chief of patrol positions.

Frizell responds to this evidence with subjective beliefs untethered to concrete facts. For example, Frizell claims that Harteau did not approve of his run for sheriff because she commented that "by running for office, you let your troops down." Frizell Dep. at 142:22-23. Even assuming Harteau made such a statement, it is insufficient to support a finding that Harteau removed him as deputy chief in retaliation for running for sheriff. He also asserts that Harteau removed him in order to appease Stanek and to neutralize him as a threat to her own reappointment. There are no facts in the record to support such a theory. Frizell's reliance on Harteau's alleged comment that she couldn't "cross" Stanek because he would "take her out," is unavailing. Frizell Dep. at 139:13-17. According to Frizell, Harteau made that comment in a conversation unrelated to and before Frizell's run for sheriff. See id. It lacks probative value in this context, particularly given the dearth of any other evidence in support of Frizell's theory.

The proximity between Frizell's run for sheriff and his removal is likewise insufficient to establish causation. The record shows that Harteau was aware of, and struggled with, Frizell's performance problems for months preceding his leave of absence and that she contemplated removing him as deputy chief before he announced his candidacy. Frizell's intervening run for office does not create a causal link under these circumstances. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (holding that "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality"). As a result, Frizell has failed to establish a constitutional violation with respect to his removal.

**B.   Comments to the Press**

Frizell's claim that Harteau withdrew the commander offer because he spoke to the press also fails because his speech was neither constitutionally protected nor a substantial or motivating factor in the adverse employment action.

**1.   First Amendment Protection**

The court determines whether a public employee's speech is protected by the First Amendment through a two-step inquiry. Connick v. Myers, 461 U.S. 138, 143-147 (1983); Kincade, 64 F.3d at 395. First, the court decides whether the speech touches upon a matter of public concern by evaluating its content, form, and context. Kincade, 64 F.3d at 396. If the speech touches on a

13

matter of public concern, the court then balances the employee's interest as a citizen in commenting on the matter with the employer's interest in promoting the efficiency of performing its services. Id. at 395 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

Speech touches upon a matter of public concern if it is a matter of "political, social or other concern of the community at large" rather than a matter of personal interest. Id. at 396 (quoting Connick, 461 U.S. at 146). The court focuses on whether the plaintiff advanced the speech as a "concerned public citizen, informing the public that the state institution is not properly discharging its duties" or merely as an employee concerned with internal policies and practices relevant only to the institution's employees. Id. "If the speech was mostly intended to further the employee's private interests rather than to raise issues of public concern, [his] speech is not protected, even if the public might have an interest in the topic of [his] speech." Bailey v. Dep't of Elementary & Secondary Educ., 451 F.3d 514, 518 (8th Cir. 2006) (quoting Schilcher v. Univ. of Ark.,387 F.3d 959, 963 (8th Cir. 2004)).

Frizell's comments to the press were purely job-related and designed to further his private interests. When asked to comment on his removal, he said: "I didn't deserve this and if there's a person that can articulate (why this happened) we would have found

them already .... I'm not planning on signing any documents until I have them looked at by a professional in the area." Lathrop Decl. Ex. 11.  Even construed in the light most favorable to Frizell, the court cannot conclude that his comments were made as a concerned public citizen.  As a result, Frizell's speech is not constitutionally protected.

### 2. Causation

Frizell has also failed to establish causation.  The record demonstrates that Harteau withdrew the offer, not because Frizell spoke to the press, but because he was dishonest when he did so. During their conversation about his removal, Frizell indicated that he understood the reasons for her decision and, notably, said that he agreed with her.  Lathrop Decl. Ex. 7, at 21:37-22:05.  His later statement to the press that he had not been given a reason for his removal was thus plainly untrue.  Further, Frizell's explanation that his statement was the result of confusion and an effort to protect the MPD's internal politics is unpersuasive given the inflammatory nature of the statement, nor does his explanation make his statement any less false. Under these circumstances, no reasonable jury could find that Harteau's actions were substantially motivated by Frizell's exercise of free speech. Given the absence of a constitutional violation, Harteau is entitled to qualified immunity and summary judgment is warranted on the First Amendment claim against Harteau in her individual

15

capacity.

As to the City,[8] a municipality is only subject to liability under § 1983 when the plaintiff establishes that the municipality maintained a policy, custom, or practice "the implementation of which amounted to deliberate indifference to his constitutional rights."  Lund v. Hennepin Cty., 427 F.3d 1123, 1125 (8th Cir. 2005) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  A municipality cannot be held liable under § 1983 unless a municipal employee is found liable on an underlying substantive constitutional claim.  Monell, 436 U.S. at 691; Abbott v. City of Crocker, 30 F.3d 995, 998 (8th Cir. 1994).  Because the court determines that Harteau did not violate Frizell's constitutional right to free speech, the City is entitled to summary judgment.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 25] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 30, 2016

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court

---

[8] A suit against Harteau in her official capacity is actually a suit "against the municipality."  Hess v. Ables, 714 F.3d 1048, 1054 (8th Cir. 2013).